UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ERIC J. DUNAWAY,

      **Plaintiff,**

v.                                      **CASE NO. 8:06-CV-1567-T-EAJ**

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

      **Defendant.**

_____ /

## AMENDED FINAL ORDER[2]

    Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for a period of disability and Disability Insurance Benefits ("DIB") under the Act.[3]

    The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, the administrative record, and the

_____

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Therefore, pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] This court sua sponte amends the court's March 17, 2008 order as to the relief granted because it could be interpreted as precluding Plaintiff from seeking an award of attorneys' fees. The amended final judgment shall state that if Plaintiff ultimately prevails in this case upon remand to the Social Security Administration, any motion for attorneys' fees under 42 U.S.C. § 406(b) must be filed within fourteen (14) days of the Commissioner's final decision to award benefits. See Bergen v. Commissioner of Social Security, 454 F.3d 1273, 1278, n.2 (11th Cir. 2006).

[3] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 11).

pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards.  See 42 U.S.C. § 405(g) (2003).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner.  Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979) (citations omitted).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard.  See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required.  See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

**I.**

Plaintiff filed an application for DIB payments on November 18, 2002, claiming an onset of disability beginning October 31, 1998, due to carpal tunnel syndrome, diabetes, chronic obstructive pulmonary disease, and hearing loss in his left ear. (T 22, 66, 70) Plaintiff's claim was denied initially and upon reconsideration. Plaintiff attended and testified at a September 27, 2004 hearing before the ALJ. (T 21, 205)  Following the hearing, the ALJ denied Plaintiff's claim in a decision dated January 28, 2005. (T 21-29) The Appeals Council declined to review the ALJ's

decision, making it the final decision of the Commissioner. (T 4-6)

The ALJ found that Plaintiff was insured for disability benefits through December 31, 2002; therefore, Plaintiff had to establish that his disability commenced on or prior to December 31, 2002. (T 22) The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date but that Plaintiff was not eligible for DIB because he was not disabled at any time through the date of the ALJ's decision. (T 22, 28) Plaintiff filed a timely petition for judicial review of the Commissioner's denial of benefits (Dkt. 1). Plaintiff has exhausted all administrative remedies and the Commissioner's decision is ripe for review under the Act.

Plaintiff, fifty-one years old at the time of the administrative hearing, has an eighth-grade education and work experience as a construction supervisor and construction worker. (T 22, 53, 72, 77, 229-31) Following the administrative hearing, the ALJ found that Plaintiff suffers from carpal tunnel syndrome, diabetes, chronic obstructive pulmonary disease, and hearing loss in his left ear. (T 24) The ALJ determined that these impairments are severe but concluded that Plaintiff's impairments or combination of impairments do not meet or medically equal an impairment listed in the Listing of Impairments found in Appendix 1, Subpart P of Regulations No. 4. (Id.)

The ALJ held that Plaintiff was unable to perform his past relevant work but that he has the residual functional capacity ("RFC") to perform a significant range of light work.[4] (T 28)

---

[4] Light work, defined at 20 C.F.R. §§ 404.1567(b), 416.967(b), involves the lifting of not more than twenty pounds occasionally with frequent lifting and carrying of objects weighing up to ten pounds.  The regulations further provide: "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. §§ 404.1567(b), 416.967(b).

Specifically, the ALJ found that Plaintiff's RFC encompasses the following limitations:

> He is able to lift/carry/push/pull up to 20 pounds occasionally and 10 pounds frequently. He is able to sit for a total of at least 6 hours per workday. He is able to stand/walk for at least a total of 6 hours per workday. He should be permitted to alternate sitting and standing at will throughout the workday. He is unable to climb, balance, stoop, crouch, kneel, or crawl more than occasionally. He is unable to climb.

(T 24) Further, the ALJ determined that Plaintiff "is an individual closely approaching advanced age" with no transferable skills from past skilled employment. (T 26)

Relying on the testimony of a vocational expert ("VE") in response to hypothetical questions which incorporated these limitations, the ALJ concluded that Plaintiff could perform jobs such as production assembler, small products assembler, security clerk, and office helper, but that he cannot perform his past relevant work. (T 27) In reaching the conclusion that Plaintiff had not been under a disability as defined by the Act at any time through the date of the decision, the ALJ held that Plaintiff's statements regarding his limitations were not fully credible. (T 25)

The medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

## II.

Plaintiff alleges the Commissioner erred by (1) failing to consider Plaintiff's obesity and chronic venous insufficiency as severe impairments; (2) improperly rejecting the opinions of Plaintiff's treating physician; (3) omitting Plaintiff's obesity-related limitations, carpal-tunnel syndrome and hearing problems from the RFC assessment; and (4) improperly discrediting Plaintiff's subjective testimony (Dkt. 17).

**A.** Plaintiff first alleges that the ALJ erred by not considering Plaintiff's obesity and chronic venous insufficiency as severe impairments. Specifically, Plaintiff argues that the ALJ completely omitted

these ailments from his assessment of Plaintiff's claim (Id. at 6).  In his decision, the ALJ found that Plaintiff suffered from the severe impairments of carpal tunnel syndrome, diabetes, chronic obstructive pulmonary disease, and hearing loss in his left ear but did not mention obesity or chronic venous insufficiency. (T 24)

The second step in the five-step process to evaluate whether a claimant is disabled is to determine his severe impairments.  A claimant is found not disabled if he does not have a severe impairment.  20 C.F.R. § 416.920(c).  An impairment can be considered not severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Stratton v. Bowen, 827 F.2d 1447, 1450 (11th Cir. 1987) (internal quotation marks and citation omitted).

The ALJ determined, based on the entire record, which of Plaintiff's impairments were severe.  This court's review of the medical evidence compels the conclusion that there is substantial evidence to support the ALJ's finding in this regard.  Although Mary J. King, D.O. ("Dr. King"), who treated Plaintiff infrequently from 2002 through 2004, diagnosed Plaintiff with obesity during an October 2002 examination, Dr. King did not impose limitations on him due to his weight. (T 111) Further, Dr. King did not repeat this diagnosis in her treatment records of Plaintiff's other visits. (T 110, 113-15, 134-40)  In fact, Dr. King's treatment records do not indicate that Plaintiff was experiencing any serious physical or mental problems and Dr. King did not discuss any obesity-related limitations in her treatment notes.  Nevertheless, the ALJ considered Plaintiff's testimony that he had gained weight due to inactivity and that he must sit on the edge of his chair to be comfortable. (T 25, 222)  Additionally, the ALJ noted that Christopher Davey, M.D. ("Dr. Davey"),

who consultatively examined Plaintiff on March 24, 2003, observed that, despite Plaintiff's weight, he was able to get on and off the examination couch without difficulty. (T 24, 124-25)  Although Plaintiff alleges that multiple limitations may be the result of his obesity (Dkt. 17 at 3-4), his treatment records do not make this link nor do they indicate any functional limitations due to Plaintiff's weight; thus, the ALJ's failure to find Plaintiff's obesity to be a severe impairment is supported by substantial evidence.

Further, a diagnosis alone is an insufficient basis for a finding that an impairment is severe. Sellers v. Barnhart, 246 F. Supp. 2d 1201, 1211 (M.D. Ala. 2002).  The severity of a medically ascertainable impairment must be measured in terms of its effect upon ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normality.  McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).  As stated, Dr. King did not impose any functional limitations due to Plaintiff's weight.

Similarly, in his decision, the ALJ reviewed Dr. King's diagnoses of chronic venous insufficiency and edema (a related condition) on two separate occasions: October 8, 2002 and January 13, 2003. (T 111, 139) Although Dr. King treated Plaintiff for these conditions by recommending elastic support hose and prescribing medication (T 112-14), she did not indicate that Plaintiff suffered from any functional limitations due to this condition.[5]

Nevertheless, Plaintiff contends that he exhibits symptoms of chronic venous insufficiency such as edema, pigmented skin, and trouble walking (Dkt. 17 at 5).  The ALJ, however, properly

---

[5] Plaintiff asserts that pages 166 and 167 are missing from the record provided to Plaintiff. (Dkt. 17 at 5)   Those pages do appear to be missing from Exhibit AC-1 (photocopies of internet medical education and information reference material).  Although that exhibit was not relevant to the ALJ's decision, nor is it necessary to consider it here, on remand, Plaintiff shall have the opportunity to supplement the record with the missing pages.

evaluated any functional limitations Plaintiff may have as a result of these symptoms.  Plaintiff's RFC states that Plaintiff should be permitted to alternate between standing and sitting at will throughout the workday and that he is unable to climb, balance, stoop, crouch, kneel, or crawl more than occasionally. (T 24) In reaching this assessment, the ALJ considered Plaintiff's testimony that he alternates 15 minutes of sitting with 15 minutes of standing and that his legs bother him. (T 25, 213-214)

Moreover, the record suggests that the ALJ considered these limitations (trouble walking and pigmented skin) in the context of Plaintiff's diabetes, which the ALJ did determine to be a severe impairment. (T 24)  In fact, Plaintiff himself reported these symptoms when testifying to his diabetes-related discomfort, not his obesity (to which he did not testify to in detail). (T 62-64, 213-14, 222)  Thus, considering the relevant facts, substantial evidence supports the ALJ's conclusion that Plaintiff's obesity and chronic venous insufficiency are not severe impairments.

**B.**  Plaintiff's second argument is that the ALJ improperly rejected Dr. King's opinions (Dkt. 17 at 7).

Generally, a treating physician's opinion is entitled to considerable weight unless there is good cause to reject those opinions.[6] Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982). However, the ALJ may reject the opinion of a treating physician if it is conclusory, contrary to the evidence, or unsubstantiated by any objective medical evidence.  Bloodsworth, 703 F.2d at 1240; accord Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987).

---

[6] A treating physician's opinion will be accorded controlling weight if it is supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in the record.  20 C.F.R. §404.1527(d)(2).

The ALJ reviewed Dr. King's treatment records and noted her evaluation of Plaintiff during October 2002, November 2002, January 2003, June 2003, and May 2004. (T 23)  During these visits, Dr. King diagnosed Plaintiff with obesity, chronic venous insufficiency, peripheral neuropathy, and probable obstructive sleep apnea/fatigue. (T 111, 137, 139)  The ALJ particularly discussed Dr. King's diagnoses of type 2 diabetes and chronic venous insufficiency of the lower extremities.  Far from rejecting Dr. King's opinion, however, the ALJ simply noted that her treatment records are sparse. (T 23)  Although the ALJ mentioned Plaintiff's occasional visits to Dr. King, the ALJ did not base his opinion on the lack of medical records or on Plaintiff's non-compliance with treatment. See Dawkins v. Bowen, 848 F.2d 1211, 1213-14 (11th Cir. 1988) (finding that the inability to afford medical treatment is an improper basis for denying an otherwise sound claim).  The ALJ's reference to the number of appointments with Dr. King was an evaluation of the notes' content rather than a determination that Plaintiff's appointments with Dr. King were too infrequent.[7]  The ALJ based his decision on the fact that Dr. King's medical notes "do not indicate the claimant was experiencing serious physical or mental problems." (T 24, 110-115, 134-140)  The ALJ also emphasized that no treating physician or state examiner (Dr. King included) has concluded that Plaintiff suffers from limitations that would prevent him from performing light or sedentary work.  (T 24, 89-150)

Additionally, Dr. King first diagnosed Plaintiff with peripheral neuropathy during his January 13, 2003 office visit (T 139), after the date last insured for disability benefits; in fact, Plaintiff did not submit any treatment records dating back to his alleged onset date of October 31,

---

[7]  There is no evidence that Plaintiff's alleged inability to afford medical treatment affected his medical care with Dr. King.  Although Plaintiff advised Dr. King in October 2002 that he could not afford the testing for obstructive sleep apnea, Plaintiff was able to meet with Dr. King for a follow-up visit in November 2002 and for other appointments in 2003 and 2004.  (T 110, 112)

1998.  The ALJ assigned Dr. King's opinions the appropriate weight and evaluated the content of the records and the opinions of Plaintiff's other treating physicians and state agency examiners in concluding that Plaintiff did not suffer from a disability as defined by the Act.   Given the circumstances, this conclusion is backed by substantial evidence.

The Plaintiff's arguments draw heavily from the findings of Plaintiff's consultative examiner HD Wassel, M.D. ("Dr. Wassel"), who evaluated Plaintiff on September 21, 2004, almost two years after the date last insured, and who imposed functional limitations on Plaintiff's ability to work. (T 23-25, 141-45)  The ALJ, however, properly rejected Dr. Wassel's opinion.  The opinions of a one-time examiner do not require the same type of deference as a treating physician.  Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986).  Dr. Wassel was not Plaintiff's treating physician.  Further, Dr. Davey examined Plaintiff in March 2003 (closer to the date last insured) and noted no complications related to diabetic neuropathy or retinopathy. (T 124)

The ALJ's consideration of Dr. King's opinions was in accordance with applicable regulations and is supported by substantial evidence.

**C.**  Plaintiff argues that the ALJ erred by omitting Plaintiff's obesity-related limitations, carpal tunnel syndrome and hearing loss when assessing his RFC (Dkt. 17 at 9-15).  Specifically, Plaintiff contends that the jobs identified by the VE all require Plaintiff to function beyond his abilities as defined by the RFC.

Residual functional capacity is a medical determination to be made by the ALJ.  See generally 20 C.F.R. §§416.945, 416.946.  The ALJ found Plaintiff's left ear hearing loss and carpal tunnel syndrome (among other conditions) to be severe impairments. (T 24)  The ALJ observed that Plaintiff's hearing loss had not stopped him from working, at least for a period of time. (T 25-26,

212-13) The ALJ also weighed the opinions of Dr. Wassel, who diagnosed Plaintiff with peripheral neuropathy, causalgia, low back syndrome/degenerative disc disease, osteoarthritis of the knees and hips right shoulder impingement, right elbow epicondylitis, and deformity of the right thumb. (T 23, 141-150)

Plaintiff suggests that the VE may have testified differently if Plaintiff's RFC—and therefore the hypothetical presented to the VE—included Plaintiff's obesity-related problems, carpal tunnel syndrome and hearing loss.

The Commissioner has the burden of proving that there is other work in the national economy that the claimant can perform. Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). But the hypothetical need only include limitation supported by the record. See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). An ALJ's failure to include claimant's severe impairments in a hypothetical question to a VE is reversible error where the ALJ relied on that VE's testimony to make a disability determination. Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985).

The ALJ did not determine that Plaintiff's obesity was a severe impairment. Where, as here, an ALJ properly determines that an impairment is not supported by the medical evidence in the record, the ALJ is not required to include such impairment in a hypothetical posed to a VA.

As to Plaintiff's complaints of carpel tunnel syndrome, Plaintiff's counsel asked the VE whether jobs existed in the national economy for an individual of Plaintiff's age, education, work experience and RFC, including the limited use of his hands. (T 235-238) Plaintiff's counsel posed

an alternative hypothetical where an individual could perform only gross manipulation one-third of the day. (T 235-236) In response, the VE answered that such an individual could work as a customer security clerk work, assembly worker and office helper work. (T 236-237) Thus, the ALJ properly relied on the VE's opinion because the hypothetical posed by Plaintiff's counsel encompassed Plaintiff's impairment of carpel tunnel syndrome. Moreover, because the VE testified that Plaintiff could do other work as a security clerk, assembly worker and office helper, the Commissioner met the burden of proving that Plaintiff could perform other work.[8]

Lastly, Plaintiff argues the ALJ erred in presenting an incomplete hypothetical to the VE because he did not include a statement about the work limitations of Plaintiff's hearing loss. In this case, the ALJ posed the following hypotheticals:

> . . . I'm going to ask you to assume that we're dealing with an individual who's closely approaching advanced age, that being 50 years of age. That the hypothetical individual has a limited education, more specifically 8th grade. He is however illiterate in the English language. And for the purposes of the first hypothetical we'll take the state's evaluation out of . . . Exhibit 6F. And we'll say that

---

[8] The ALJ, not the VE, determines whether a specific number of jobs constitutes a significant number. Brooks v. Barnhart, 133 Fed. Appx. 669, 670 (11th Cir. 2005) (citing 20 C.F.R. § 404.1512(g)). In his decision, the ALJ noted that based on the VE's testimony, Plaintiff could engage in work in the following four types of jobs: (1) production assembler (300 jobs in the local economy, 1,800 jobs in state economy, 33,000 jobs in the national economy), (2) small products assembler (300 jobs in the local economy, 1,800 job in the state economy, 33,000 job in the national economy) , (3) security clerk (200 jobs in the local economy, 1,200 jobs in the state economy, 22,000 jobs in the national economy), and (4) office helper (600 jobs in the local economy, 3,600 jobs in the state economy, 67,000 jobs in the national economy). (T 27) Based on Plaintiff's counsel's alternative hypothetical, the VE concluded that the number of jobs available in the national, state and local market would be reduced by half. (T 237) Accordingly, even though the VE testified that the numbers of jobs would be reduced under the alternative hypothetical, the court finds that the ALJ did not err in finding that Plaintiff could do other work that exists in significant numbers in the national economy. Cf. Allen v. Bowen, 816 F.2d 600, 602 (11th Cir. 1987) (174 small appliance repairman jobs available in the area in which claimant lived was sufficient quantity of jobs to establish the existence of work in significant numbers).

this hypothetical individual can perform light work, that is to say can lift 10 pounds frequently, 20 pounds occasionally, sit for six hours in an eight-hour day, stand for eight hours in an eight-hour – stand for six hours in an eight-hour day.  That in terms of postural limitations they can – they are to  – can never engage in any climbing.  They are limited to occasional, that being two to four hours of an eight-hour day all other postural movements.  In terms of environmental – the environmental area they are to avoid all hazards. . . .

. . .  For purposes of a second hypothetical question let us assume everything we assumed in the hypothetical question #1 except that the hypothetical individual is required to have a sit, stand option - a voluntary sit, stand option throughout the course of an eight-hour workday.

. . .  For hypothetical question #3 let us assume everything that we have for hypothetical questions 1 and 2 and add to it that as a result of medication the hypothetical individual is going to be required to rest for a one-hour period during the course of an eight-hour day. Can he perform any work?

(T 232-235)

Plaintiff asserts that the ALJ failed to indicate in his questions that Plaintiff suffered from hearing loss.  Indeed, the ALJ should have included information about Plaintiff's hearing impairment in the hypothetical questions.[9]  The ALJ found that Plaintiff suffered from a degree of deafness and Plaintiff's hearing problem is supported by the record.   (T 24)  Dr. King noted evidence of ear drainage problems in the internal canal.  (T 137)  Dr. Davey concluded that Plaintiff is hard of hearing or deaf on the left side.  (T 125)  Dr. Wassel mentioned that Plaintiff complained of hearing loss during his examination.  (T 141)  Furthermore, during the hearing, Plaintiff testified

---

[9] It is true that the ALJ also noted that despite "poor hearing" in Plaintiff's left ear, Plaintiff was still able to sustain employment.  (T 24-25) Notwithstanding this observation, the ALJ still found "hearing loss of the left ear" to be a severe impairment.   (T 24, 28) By definition, a severe impairment poses work-related restrictions.  See generally  Brady v. Heckler, 724 F.2d 914, 902 (11th Cir. 1984).

he had a hearing problem and the transcript reflects that Plaintiff had difficulty hearing or understanding questions posed to him.[10]   (T 208, 212-213, 217-221)

Because the ALJ found Plaintiff's hearing loss in his left ear to be a severe impairment but did not specify any functional limitations resulting from this impairment, the hypothetical question posed to the VE was incomplete.  Without additional findings at the administrative level, the court is unable to conclude that substantial evidence supports the decision denying disability benefits.

On remand, the ALJ shall specify the functional limitations from Plaintiff's hearing loss, incorporate these limitations in determining Plaintiff's RFC and obtain the VE testimony as to whether there are jobs in the national economy Plaintiff can perform consistent with these limitations.

**D.**  Plaintiff's final contention is that the ALJ improperly discredited his testimony.  According to Plaintiff, the ALJ rejected his testimony because he did not seek out frequent medical treatment (Dkt. 17 at 15).

If remand is required on an issue raised in the case, it is unnecessary to review other objections to the ALJ's conclusion.  <u>See generally</u> <u>Jackson v. Bowen</u>, 801 F.2d 1291, 1294 n.2 (11th Cir. 1991).  Thus, it is unnecessary to address Plaintiff's arguments relating to the ALJ's credibility determination as to Plaintiff's testimony.  However, on remand, the Commissioner shall consider the authorities cited by the parties on this issue.

## III.

In concluding that remand for further fact-finding is necessary, this court expresses no views

---

[10]   The ALJ's mere reference to Exhibit 6F is not sufficient to apprise the VE of the extent of Plaintiff's hearing loss limitations.  (T 232)

as to what the outcome of the proceedings should be. At the reopened hearing, each party shall have the opportunity to submit additional evidence.

Accordingly and upon consideration, it is **ORDERED AND ADJUDGED** that:

(1)    the decision of the Commissioner is **REVERSED** and this case is **REMANDED** for further administrative proceedings consistent with the foregoing; and

(2)    The Clerk of Court is directed to enter an amended final judgment pursuant to 42 U.S.C. § 405(g) as this is a "sentence four remand" and thereafter to close the file. Shalala v. Schaefer, 509 U.S. 292, 302-03 (1993); Newsome v. Shalala, 8 F.3d 775, 779-80 (11th Cir. 1993). The amended final judgment shall state that if Plaintiff ultimately prevails in this case upon remand to the Social Security Administration, any motion for attorneys' fees under 42 U.S.C. § 406(b) must be filed within fourteen (14) days of the Commissioner's final decision to award benefits. See Bergen v. Commissioner of Social Security, 454 F.3d 1273, 1278, n.2 (11th Cir. 2006).

**DONE AND ORDERED** in Tampa, Florida on this 28th day of April, 2008.

ELIZABETH A JENKINS
United States Magistrate Judge